PORT ROYAL & AUGUSTA RWY. Co. *et al. v.* KING *et al.*

As the principal corporation owning the railroad was created by the State of South Carolina, and as all the railroad, except a small part, is located in that State, and was in the hands of a receiver by virtue of legal proceedings instituted in that State and still pending when the same receiver was appointed, by the order now excepted to, to take charge of so much of the property as is situated or found within this State, there was no abuse of discretion by the judge in passing this order. It is best for the interests of all concerned, that the control and management of the whole railway should be in the same hands, and that the small fraction of the line located in this State should continue to be used and worked in connection with the main body of the road. So long as courts exercising jurisdiction in South Carolina continue in possession of the main body by the hands of a receiver, it would be wise and judicious to invest that receiver, and allow him to remain invested, with authority to manage the part of the road located in this State, also. If the company should be hereafter reinstated in the possession of that part of its property located in South Carolina, application can then be made to the superior court of Richmond county, or to the judge thereof, for a like reinstatement of the company in the possession of so much of its property as is located in Georgia.

November 27, 1893.

Petition for injunction, etc. Before Judge RONEY. Richmond county. May 24, 1893.

LAWTON & CUNNINGHAM, DENMARK & ADAMS, JOSEPH GANAHL and J. C. C. BLACK, for plaintiffs in error.

ALEX. C. KING, W. J. VERDIER and SMYTHE & LEE, *contra.*

LUMPKIN, Justice.

Upon the petition of Henry B. King *et al.*, stockholders of the Port Royal & Augusta Railway Company, the judge below appointed one Averill permanent receiver of the railway and other assets of the company in the State of Georgia, and granted an injunction restraining the Central Railroad & Banking Company of Georgia, until further order, from operating the Port

Royal & Augusta railway, or voting certain stocks and bonds held or controlled by the Central, or in any manner interfering with the property, assets or management of the Port Royal railway. To this action of the court both companies excepted. The following facts appeared on the hearing: On the 21st day of December, 1857, the State of South Carolina granted a charter to the Port Royal Railroad Company, whose purpose was to construct a line of railway from the waters of Port Royal harbor, in that State, to Augusta, in the State of Georgia. Afterwards, on the 19th day of December, 1859, the General Assembly of this State passed " An act to charter the Port Royal railroad," the preamble and first section of which act were in the following words: " Whereas, the legislature of South Carolina has, by public statute, incorporated a company to build a railroad from the waters of Port Royal harbor, in the neighborhood of Beaufort, to the Savannah river, in the direction of the city of Augusta, and it is deemed proper to confer upon the same company corporate powers in Georgia, and to grant the right to construct the portion of railroad in this State ; ' . . . Be it therefore enacted, &c., that such persons as may be made a body corporate by the public law of South Carolina to build a railroad between Port Royal and Augusta, are hereby created a body politic in this State ; and they shall have the right to continue and construct their road from the boundary between the two States, by the nearest and most practicable route, to the city of Augusta ; provided, that they shall cross the river at or below Augusta by a drawbridge ; and provided, there shall be created thereby no obstruction to the free navigation of the Savannah river and its branches." Acts of 1859, p. 324.

After the railroad was built, it was sold at judicial sale, and the purchasers thereof filed certificates in the offices of the secretaries of State of both Georgia and

South Carolina, incorporating themselves as " The Port Royal and Augusta Railway Company." The entire length of the railroad is one hundred and twelve miles, of which there are within the limits of the State of Georgia about three and one half miles only, the remainder of the line lying wholly within the State of South Carolina. Before the appointment of Averill as receiver, and the granting of the injunction by his honor Judge RONEY, Averill had, under proceedings instituted in the court of common pleas for the county of Beaufort in the State of South Carolina, been appointed receiver of the Port Royal & Augusta Railway Company of that State, and all its property therein had, by virtue of this appointment, been placed under his management and control. An effort had been made to transfer the litigation over this company and its property to the United States court in that State, concerning which there seemed to be a difference of opinion between the State and Federal judges, but as to which the United States judge had not fully made up his mind. He had, however, passed an order directing that Averill, the receiver of the State court, remain in possession and control of the property until a final decision upon the question of removal should be made by him. The foregoing is a brief summary of all the facts which we deem material to a proper disposition of the case now presented for our determination.

It will thus be seen that, without reference to the question of a possible conflict of jurisdiction between the State and Federal courts of South Carolina, Averill, when Judge RONEY acted, was, under the authority of both these courts, rightfully in possession of and exercising control over all the property of the Port Royal company lying in the State of South Carolina. In the exercise of his discretion, Judge RONEY appointed Averill receiver of the property of the company situated in the

State of Georgia, and he thus secured the management and control of the entire property of the company in both States. The record before us is voluminous, and in the argument of the case a large number of important and interesting questions both of law and of fact were raised and discussed by the learned counsel on both sides. We deem it unnecessary, however, to go into them, because, in our judgment, the case, so far as we may properly deal with it, is really a very simple one. It is a most obvious proposition that a railway cannot be successfully and profitably operated when cut up into sections or fragments and a different person placed in control of each. Indeed, it would hardly be possible for the business of a railway thus dismembered to be properly carried on at all; and undoubtedly, it would greatly embarrass the management of the greater part of a line of railway if a small fragment of it at one of its *termini* was under different, and perhaps antagonistic, control. The present case affords such an instance, for although, as before stated, the line of the Port Royal & Augusta railway extends for a distance of 112 miles, scarcely more than three and one half miles of that line are within the limits of this State. Nevertheless, this small fragment is none the less important to the successful operation of the whole line than were it many more miles in extent, for it serves as a connecting link, and enables the company to reach Augusta, an essential terminal point because affording connections with other lines of railway. Certainly, in any view of this case, considerations of economy, safety and efficiency dictate and demand that the entire property and business of the company should be under one and the same management. Surely it cannot be denied that it is best for the interests of all concerned, whether stockholders, creditors, patrons or the public generally, that the small fraction of the line located in this State

should be used and worked in connection and in harmony with the main line of the road, and this could be successfully accomplished only in the manner indicated. That the South Carolina company was the main corporation, and that the Georgia corporation was merely ancillary to it, is clearly shown by the language used by the legislature in the preamble and first section of the Georgia charter, already quoted in the above statement of facts. It is clear, we think, that the courts of South Carolina are best entitled to entertain and exercise jurisdiction over the affairs of this corporation in their present complicated state ; and so long as those courts, by the hands of a receiver, continue in possession of the main body of the road and its property, it would, in our judgment, be unwise and improper to fetter and embarrass that receiver by depriving him of control over so much of the company's property as lies within the State of Georgia. There can be no question, we think, that instead of so doing, the courts of this State should take such action as will leave him with full authority to manage the entire property. This is true, not merely upon the doctrine of comity of States, but also because it is manifestly the best course to be pursued in the premises. We would be going an extreme length to hold that the trial judge abused his discretion in passing the order complained of. Not only was there no abuse of discretion, but the action taken by him was eminently wise and proper. It will be within his power, in the future, to give such direction and pass such orders as may become necessary to carry into effect the policy herein outlined with regard to the property and control of this company. If the company should hereafter be reinstated in the possession of that part of its property located in South Carolina, it will then be time enough to make the proper application for a like reinstatement of the company in the possession and control of its prop-

erty located in Georgia; and should this contingency
arise, the company will doubtless be granted appropri-
ate and effectual relief.        *Judgment affirmed.*