<center>FICKEN <i>v.</i> CITY OF ATLANTA.</center>

1. Where a party examines a witness introduced by him, though upon a single point, the opposite party has a right to cross-examine such witness upon the whole merits of the matter in controversy.

2. There was no error in refusing to rule out testimony.

3. It is error, which requires the grant of a new trial, for the judge, during the progress of a trial, to express or to intimate his opinion as to what has been proved; and this is true though it be done in a colloquy between the judge and counsel as to the admission or rejection of evidence, when it appears that the judge goes beyond the limits of legitimate discussion and unnecessarily deals with the actual questions of fact involved in the case.

4. A charge not adjusted to the evidence and which is calculated to mislead the jury is erroneous.

5. It was erroneous to instruct the jury that "The city is allowed to show, where a piece of property is damaged in value by reason of a cut-down or a fill-up, or any other change in the fixing of the street, — to show that the improvement of the street is a set-off to any damage done to the particular property; and . . if you believe that although this property was hurt by reason of the cut-down, if you believe the improvements made there on the street were sufficient to set off any damage done by reason of the cut-down, then you would not find anything for the plaintiff, but would find for the defendant." Such charge was susceptible of the construction that the city could set off against the plaintiff's claim for damages the enhanced values of property on other parts of the street, whether plaintiff's property was enhanced in value or not.

<center>Argued February 19, — Decided March 12, 1902.</center>

Action for damages. Before Judge Calhoun. City court of Atlanta. June 29, 1901.

*W. H. Terrell*, for plaintiff.

*J. L. Mayson* and *W. P. Hill*, for defendant.

FISH, J.   Edward Ficken brought his action for damages against the City of Atlanta, returnable to the September term, 1900, of the city court of Atlanta.   His petition alleged, in substance, that in September, 1899, he was the owner of a lot in Atlanta, fronting on Old Wheat street; that at or about that time defendant, by its officers, servants and agents, graded and excavated that portion of said street in front of plaintiff's lot, whereby his lot was left some seven feet above the street, by reason of which its market value was decreased to the amount of $750; for which sum he prayed judgment.   The defendant denied all the material allegations of the petition.   Upon the trial, the uncontradicted evidence was, in effect, that the plaintiff owned the lot in question at the time stated in the petition; that the commissioner of public works of Atlanta, at or about the time indicated, and with the employees and teams of the city, had a considerable part of the dirt from that portion of Old Wheat street in front of plaintiff's lot removed therefrom, for the purpose of filling washouts in other near-by streets of the city; that the cost of removing this dirt and placing it in such washouts was less than $100; that there was a general ordinance of the city authorizing the commissioner of public works to have such work done without a special ordinance so directing, when the cost of the same should not exceed $100; that the plaintiff sold his lot in March, 1900; that some time after this sale the city had Old Wheat street put upon a permanent grade.   There was evidence to show that plaintiff's lot, as left after the removal of the dirt in September, 1899, was of less value than it was before the dirt was removed, and also testimony to show that its value was not decreased by this work; and there was testimony showing that the grading done subsequently to the sale of the lot by the plaintiff enhanced the value of the same.   There was a verdict for the defendant. The plaintiff made a motion for a new trial, which was overruled, and he excepted.

1. The plaintiff swore and introduced a witness who was present under a subpœna duces tecum, and examined him only in reference

to a deed in his possession. The court, over the objection of the plaintiff, then allowed the witness to testify, on cross-examination, as to the merits of the case. The motion for a new trial complained that this was error. There is no merit in this complaint. There was no question as to the competency of the witness, the only point made being that the defendant did not have the right to cross-examine him in reference to the merits of the case, under the circumstances. In *Aiken* v. *Cato*, 23 *Ga.* 154, it was held: "When a witness is called and examined, even to only a formal point, by one party, the other party has the right to cross-examine him as to all points."

2. Error was assigned in the motion for a new trial upon the refusal of the court, upon motion of plaintiff, to rule out, as irrelevant, this testimony of a witness: "I think the grading of the street made the property more valuable. When the job was completed, it helped the property." We do not think this evidence was irrelevant. The contention of the defendant seems to have been, that removing the dirt from the street in 1899 was simply a part of a scheme to put the street on a permanent grade, that this scheme had been carried out, and that when the work, in pursuance thereof, had been completed, the lot in question was not decreased in value, but was worth more than it was when this work was begun. It was for the jury, under this contention, to determine, from the evidence submitted, whether removing the dirt in 1899 was part of a scheme to put the street on a permanent grade; and if so, whether, when the entire work had been completed, the value of the plaintiff's lot had been diminished. Therefore it was competent for the defendant, in connection with evidence tending to show that the work which the plaintiff claimed damaged his property was but a part of such a scheme, which had been carried to completion, to show that when the grading of the street was finished, the lot of the plaintiff was not thereby damaged. The plaintiff had the right, by cross-examination, to ascertain from the witness what effect the mere cutting down of the street in front of the plaintiff's lot, in 1899, had upon the value of such lot, and also to show whether or not the enterprise was then completed; and, moreover, he might have invoked proper instructions from the court as to this matter.

3. The motion for a new trial recites that, during the progress of the trial, and in the presence and hearing of the jury, the court

made the following statements: "The work was not completed before you sold it; and if it was sold when the work was in an incomplete condition, it don't make any difference when it was completed, a year or more afterwards. If the city is going to grade a street and before it was completed you sell, and you say you are damaged, you can't state in the midst of the work you are damaged; but if it is afterwards completed the city is certainly relieved, if you are not damaged in its completed condition." "The evidence tends to show it was a general scheme of the city." "If they show that it was part of the scheme to go there and fix it as they did, and you happen to sell out before they finished it, you can't claim damages. It is a question for the jury whether it was a part of a scheme or not." "I hold that the commissioner of public works has no right to grade a street without it first being passed up by the city council." The error assigned upon these statements was, that they contained expressions or intimations of the judge's opinion as to what had been proved. We think this exception well taken. Section 4334 of the Civil Code provides that it is error for a judge, during the progress of the trial, or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved, and that should any judge violate the provisions of the section, the decision in such case shall be reversed and a new trial granted. It is true that the statements objected to seem to have been made by the judge in a colloquial discussion between him and counsel, upon the question of admitting or rejecting evidence; and while the provisions of the section cited should not be so rigidly applied as to prevent the judge from giving his views on legal questions presented by such a discussion, yet he must avoid making any plain and direct statement concerning what has been proved or not proved. If necessary to allude to the evidence, he should do so in hypothetical terms. *Railroad* v. *Lucas,* 110 *Ga.* 121, and cases cited; *Insurance Co.* v. *Wickham,* Id. 130.

4. Another ground of the motion for a new trial is, that the court erred in charging the jury as follows: "Now, under the law, the State of Georgia has given the city a charter, and the city can only act through its charter as given to it by the legislature, and it gives the city the right over its streets to grade them, to widen them, or to make new streets, or anything of that kind, and the council only has the right to do that." Another ground of the mo-

tion is, that the court erred in charging: "If you believe that the commissioner of public works went out and graded a street and graded it without authority from the general council authorizing it, or any act or resolution passed by it directing, then he did it without the authority of the city, and the city would not be liable for it." The exception to these instructions was, in effect, that they were not applicable to the evidence, and were calculated to mislead the jury, by impressing them with the idea that, in the absence of a special resolution, or ordinance, of the city council authorizing it, the commissioner of public works had no authority to do the work which the plaintiff claimed damaged his property, even though the cost of such work was less than one hundred dollars. This exception was well taken. Section 1021 of the Code of the City of Atlanta, which was in evidence, provides: "The said commissioner of public works shall not be authorized to make any contract, or do any work of his own motion, the cost of which would exceed one hundred dollars." The uncontradicted evidence of the commissioner, under whose supervision the dirt was removed from the street in front of the plaintiff's lot, was to the effect that he did such work in pursuance of his duty as such official, and that the cost of the same did not exceed one hundred dollars. Nobody contended that there was any special ordinance, or resolution, authorizing the commissioner to do that work, and there was no evidence as to whether or not the permanent grading of the street, which was done after the plaintiff sold his lot, was authorized by special ordinance, or resolution, of the city council.

5. The last ground of the motion for a new trial was, that the court erred in charging the jury that "The city is allowed to show, where a piece of property is damaged in value by reason of a cut-down or a fill-up, or any other change in the fixing of the street,— to show that the improvement of the street is a set-off to any damage done to the particular property; and . . if you believe that although this property was hurt by reason of the cut-down, if you believe the improvements made there on the street were sufficient to set off any damage done by reason of the cut-down, then you would not find anything for the plaintiff, but would find for the defendant." The exception to this charge was, in effect, that it was susceptible of the construction that the city could set off against plaintiff's claim for damages enhanced values of other property on

other parts of the street, whether plaintiff's property was enhanced in value or not. There was evidence that the grading of the street was a public benefit and improved the property thereon. The legal principle which his honor doubtless intended to give in the instruction complained of is, that a municipality may set off, against alleged damage to realty in consequence of its having graded a street, any enhancement of the value of that particular property, resulting from the grading; but this principle was not clearly and accurately stated by him, and we think that the charge was subject to the criticism made upon it by the plaintiff in error. It follows from the foregoing that there must be a reversal of the judgment overruling the motion for a new trial.

*Judgment reversed. All the Justices concurring, except Little, J., absent.*