ALLEN *v.* THE STATE.

No. 14011. JUNE 18, 1942.

180

*Donald H. Fraser* and *John W. Underwood,* for plaintiff in error.

*R. L. Dawson, solicitor-general,* contra.

ATKINSON, Presiding Justice. 1. The first question assumes a violation of the Code, § 81-1104, and therefore that the expression of opinion does not relate to some fact not in dispute, or admitted by the defendant himself to be true, and that accordingly it was erroneous for the judge during the progress of the case but not in the charge to the jury, to express or intimate his opinion as to what has or has not been proved. On such assumption it is inquired, is such violation *so erroneous* that it is mandatory on the reviewing court to reverse the judgment without regard to the question of injury to the complaining party, merely because of such error? In the stated circumstances the law conclusively presumes injury on account of the error, and the mandatory provisions of the stated Code section require reversal of the judgment of the trial court on proper assignment of error. An answer in the affirmative to the first question results from application of principles stated in the second division of this opinion. The same result was reached in *Smoot* v. *State,* 146 *Ga.* 76, 80 (90 S. E. 715), but the complaint there was of improper argument by the solicitor-general, to which the cited Code section does not apply. In the answer to the first question Reid, C. J., Atkinson, P. J., and Jenkins, J., concur. Bell, J., concurs in part, and dissents in part. Grice and Duckworth, JJ., concur specially.

2.   Where during the progress of the trial the judge by interrogation of a witness for the State violates the provisions of the Code, § ·81-1104, which inhibits the judge from expressing or intimating an opinion as to what has been proved or as to the guilt of the accused, and the defendant passively sits by and takes his chances of acquittal, without having made a motion for a mistrial or any other motion at the time of the commission of the error, he may as a matter of procedure nevertheless complain of the error for the first time in a motion for a new trial.

The second question, which will now be dealt with, assumes that the trial "judge" intimated or expressed an opinion as to what had been proved or as to guilt of the accused, and thereby violated the Code, § 81-1104, which declares: "It is error for any judge of a superior court, in any case, whether civil or criminal or in equity, during its progress, or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved, or as to the guilt of the accused; and should any judge of said court violate the provisions of this section, such violation shall be held by the Supreme Court or Court of Appeals to be error, and the decision in such case reversed, and a new trial granted in the court below, with such directions as the said Supreme Court or Court of Appeals may lawfully give." It is inquired, "as a matter of procedure," if the resulting error may be complained of for the "first time in the motion for a new trial," it appearing that there had been "no antecedent" motion challenging the error. The Court of Appeals having certified that decision of the question is necessary to a proper decision of the case, this court will not examine the record to determine whether a decision of the question is necessary to a proper determination of the case (*Harvey* v. *Thompson,* 128 *Ga.* 147, ¯57 S. E. 104, 9 L. R. A. (N. S.) 765, 119 Am. St. R. 373 ; *Happy Valley Farms Inc.* v. *Wilson,* 192 *Ga.* 830, 832, 16 S. E. 2d, 720), but will proceed to answer the question expressed by its terms, *Jackson* v. *Anglin,* 193 *Ga.* 737 (19 S. E. 2d, 914).

The case of *Potter* v. *State,* 117 *Ga.* 693 (45 S. E. 37), did not involve a question certified by the Court of Appeals, but did involve a question of "procedure," as disclosed by the record in the case, as to which the Supreme Court had jurisdiction. In that case a witness for the State, having changed his testimony as to a particular fact, the following colloquy occurred between the judge and

the witness: "The court: 'You said just now that you made one statement, and then you said you would change that statement?' Witness: 'Yes, sir.' The court: 'Did you tell them that because you were satisfied that you had made a mistake?' Witness: 'Yes, sir; I was satisfied that I had made a mistake.' His honor thereupon remarked: 'You did exactly right, then, to change your statement.' To the correctness of this observation the witness gave his assent by saying, 'Yes, sir.'" No motion to declare a mistrial or other motion was made at the time, but the defendant sat by passively and for the first time complained of the remarks of the court in his motion for a new trial. Dealing with this phase of the case the Supreme Court reversed the judgment refusing a new trial. In the opinion it was said: "It is earnestly contended in behalf of the plaintiff in error that the above-quoted remark by the presiding judge was 'equivalent to the expression of his opinion that the witness had spoken the truth. In other words, from the use of this commendatory language the jury might well' have received the impression, and probably did in fact 'infer, that the court at least believed that the witness was honestly mistaken.' There is much force in this argument. While we are satisfied that his honor did not mean to intimate that the witness had acted conscientiously and uprightly in testifying on the trial what he believed was the real truth, and had done exactly right in not adhering to a previous statement which he had made under an honest mistake of fact, yet how can we arbitrarily assume that the jury understood his honor as intending to say merely that if, in point of fact, the witness had made such a mistake and had later become convinced that this was so, then he did exactly right to change his statement so as to make it conform to what he believed was the truth? If it be once conceded that the jury may not have so understood his honor, or that his remark was calculated to convey to them the impression that he was satisfied of the good faith of the witness and approved the course he had pursued, then the making of this remark must be regarded as not only unfortunate, but as affording cause for ordering a new trial. Our Civil Code, § 4334 [Code of 1933, § 81-1104], expressly declares that a trial judge shall not in any case, civil or criminal, 'during its progress or in his charge to the jury, . . express or intimate his opinion as to what has or has not been proved;' and this section also contains the impera-

tive mandate that when it shall appear, in any case, that there has been a violation of its provisions in this regard, 'such violation shall be held by the Supreme Court to be error, and the decision in such case reversed, and a new trial granted.' So it has been held that a disregard of this section on the part of a trial judge 'renders the grant of a new trial imperative, without reference to the correctness of the verdict.' *Sanders* v. *Nicolson,* 101 *Ga.* 739 [28 S. E. 976]. In an early case, that of *Pound* v. *State,* 43 *Ga.* 90, this court ruled that the judge of the trial court committed grave error in complimenting a witness for the prosecution, since to do so was 'to give an improper potency to the influence of his testimony;' and in *Florida R. Co.* v. *Lucas,* 110 *Ga.* 121 [35 S. E. 283], it was held to be a violation of the provisions of the above-cited section of the Code to 'allude to the testimony of a particular witness in such a manner as to apparently give it judicial indorsement and approval.' After mature deliberation, we have reached the conclusion that the remark of the judge of which complaint is made in the present case was calculated to convey to the jury the idea that he accepted as true the explanation offered by the witness under examination concerning contradictory statements previously made by him, and gave approval to his apparently conscientious retraction of such statements when, as he testified, he became convinced he was mistaken as to what really occurred. See *Alexander* v. *State,* 114 *Ga.* 266 [40 S. E. 231]. On the argument before us, counsel for the State suggested that as the accused did not present a motion for a mistrial because of the supposed prejudicial effect of the judge's comment to this witness, but remained silent during the further progress of the trial and took his chances of an acquittal, he could not after verdict with good grace insist that he was entitled to a new trial on that ground. In this connection, our attention was directed to a line of decisions by this court, to the effect that where a solicitor-general is guilty of improper conduct calculated to operate to the prejudice of the accused, the latter is called upon to elect whether he will exercise his right to demand that the trial be stopped then and there, or consent to its proceeding upon the judge's taking all necessary steps to remove any hurtful influence upon the jury by cautioning them not to pay any regard to such improper conduct on the part of counsel for the State, etc., etc. We recognize these decisions to be sound, but are of the

opinion that they are not controlling in the present case. A solic-
itor-general takes the role of an advocate, and experience has dem-
onstrated that he may, at times, in the heat of discussion say things
which are improper, or be led by his zeal as a partisan into adopt-
ing measures to which resort should never be made. When this
·occurs, the law gives to the accused the option of either moving
for a mistrial, and thereby securing a trial before another jury, or
taking his chances of acquittal as thus more or less impaired.
When, however, the presiding judge violates the duty of passive
noncommittal imposed upon him by the Civil Code, § 4334 [Code
of 1933, § 81-1104], the accused is not, and should not be, put to
such an election. There is connected with the court no one of
higher authority to bestow upon the judge the frown of disapproval
or to caution the jury not to allow his improper conduct to influ-
ence them. He might, it is true, if called on to do so, undertake
to remove its sting by explaining to the jury that he did not intend
to express any opinion of his own as to what had been proved, and
was not to be understood as even intimating what his opinion in
regard thereto really was. But he could go no further. He would
not be at liberty to add that, in point of fact, he did not entertain
the views his ill-chosen language would seem to indicate; for to
thus attempt to correct and cure his error as against the accused
would involve the judge into the predicament of committing a fresh
error, as against the State, of precisely the same nature. So all
he could properly do would be to disclaim any *intention* of express-
ing or intimating an opinion, leaving the jury free to draw their
own conclusions as to whether or not he had, as matter of fact,
actually committed himself by unwittingly betraying his views to
them. The law gives to one accused of crime the absolute guar-
antee of a new trial in the event he is deprived of a fair and im-
partial trial by reason of the fact that the judge before whom he is
convicted commits the grave error which the above-mentioned sec-
tion of our Code declares can in no case be overlooked or forgiven.
It is not within our province to change the law." See also *Ficken*
v. *Atlanta,* 114 *Ga.* 970 (41 S. E. 58).

The above-quoted decision concurred in by all the Justices is
binding as a precedent, and controlling on the question now pro-
pounded by the Court of Appeals. It properly distinguishes vio-
lation of the Code, § 81-1104, by the judge, which requires the

grant of a new trial, from improper remarks by the solicitor-general and similar cases, in which the defendant may not sit by passively, taking the chance of an acquittal, and complain for the first time in a motion for a new trial. On the basis of the statute embodied in the Code section, it rules that where the judge violates the statute by expressing or intimating an opinion as to what has or has not been proved or as to guilt of the accused, the defendant may take his chance of acquittal, and for the first time complain of the error in a motion for a new trial; but that under a line of decisions he can not do so on the basis of misconduct of the solicitor-general or others *than the judge*. It might have been better to state expressly that one reason for this difference is that the mandatory provision of the statute applies to the judge and requires the grant of a new trial, but does not apply to the solicitor-general or others than the judge. Examples of the latter class of cases include *Brooks* v. *State,* 183 *Ga.* 466 (188 S. E. 711), and cit., but, as brought out in the above-quoted opinion, they stand on a different footing from violation of the statute by the judge. The cases of *Perdue* v. *State,* 135 *Ga.* 277 (69 S. E. 184), *Kay* v. *Benson,* 152 *Ga.* 185 (108 S. E. 779), *Herndon* v. *State,* 178 *Ga.* 832 (6) (174 S. E. 597), and *Armstrong* v. *State,* 181 *Ga.* 538 (2) (183 S. E. 67), did not involve expression of opinion by the judge as to what had or had not been proved or as to the guilt of the accused. The decisions in *Moore* v. *McAfee,* 151 *Ga.* 270 (11) (106 S. E. 274), and *Barnett* v. *Strain,* 151 *Ga.* 553 (5) (107 S. E. 530), involving expression of opinion by the judge as to what had or had not been proved, overlooked the case of *Potter* v. *State,* 117 *Ga.* 693 (supra), and must yield to that as an older decision binding as a precedent. Code, § 6-1611; *Killingsworth* v. *Killingsworth,* 148 *Ga.* 590 (2) (97 S. E. 539); *Pierce Trading Co.* v. *Blackshear,* 182 *Ga.* 649 (186 S. E. 721). It should not be held that the Justices rendering these decisions did not overlook the *Potter* case but purposely refrained from mentioning it because they regarded it as unsound. If the Justices had not overlooked that case, their duty was to follow it, or, if they questioned its soundness, to call for its review and overrule it. If it should be contended that where the judge violates the Code section otherwise than in his charge to the jury, as a matter of procedure the aggrieved party must at his peril make some motion at the time for

correction of the error, the answer is that the statute which prescribes procedure does not so provide. As brought out in the *Potter* case, the statute provides that when such error is committed by the judge in any case *during its progress, or in his charge to the jury,* such violation of the statute shall be held error by the reviewing court, and the decision in such case reversed, *and a new trial granted in the court below.*

This mandatory provision of the statute, like an established fact, must be respected. It can not be avoided by resort to supposed procedural circumvention. The statute provides its own procedure. It contemplates correction of error by motion for a new trial, as provided for in other sections of the Code, and on the basis of such error declares unconditionally that a "new trial" (not a "mistrial" which he may not want) "shall be granted in the court below." If a change of such procedure would be wise, that would be a matter to be dealt with by the legislature, and not by the courts, the powers of which branches of government "shall forever remain separate and distinct." Code, § 2-123. The case is not analogous to requirement of procedure for declaring void legislative acts in violation of the constitution, as provided in the Code, § 2-402. That section does not purport to deal with the question of procedure. In the instant case the injured party commits no act to estop him. He makes no waiver. He is in no sense responsible for what the judge may say, and should not be cut off from complaining in a motion for a new trial of the expression of opinion by the judge which had its injurious effect at the instant the expression was made. The burden should not be imposed upon an attorney of carrying on a controversial running fire with the trial judge, respecting the judge's own conduct during the progress of the trial. The cases of *Howell* v. *State,* 162 *Ga.* 14 (5) (134 S. E. 59), *Tanner* v. *State,* 163 *Ga.* 121 (9) (135 S. E. 917), *Reed* v. *State,* 163 *Ga.* 206 (2), 216 (135 S. E. 748), and *Daniels* v. *State,* 167 *Ga.* 54 (3-c), (145 S. E. 45), involved remarks by the judge, not in his charge, but in the presence of the jury, that were held not to require the grant of a new trial. In those decisions the correctness of the quoted ruling from *Potter* v. *State,* supra, was not challenged, but the ruling was based on insufficiency of the remarks by the judge to show violation of the statute. No such ruling would be appropriate in the instant case, where the question

propounded by the Court of Appeals assumes violation of the statute by the judge and relates only to "procedure," *where there is such violation.* It is inapt to suggest that a party to a case who acts through his attorney at law will "lie in ambush" for the judge and the opposite party, if after the judge has violated the Code, § 81-1104, by expressing his opinion in relation to controverted matters as to what has or has not been proved, or as to the guilt of the accused, such party fails to make complaint of the injury thereby inflicted, and for the first time makes complaint in a motion for a new trial. Such aggrieved party has a right to go on with the trial and obtain a favorable verdict if he can, and in doing so he does not "lie in ambush" for any one. The violation of the statute is the judge's own unprovoked error of which he must know. It has done its injury at the instant it is committed. If such an aspersion could be applied either to judge or attorney, it would seem more fitting to apply it to the judge, who violates the statute and sits by, taking the chance of complaint being made, and, if not made, refusing a motion for a new trial, because complaint was not made. Such action by the judge would substantially import into the statute a condition that the mandatory provision of that law does not authorize. It will be observed that the authorities in this State antedating the *Potter* case and those from the United States Supreme Court as cited in the opinion prepared by Justice Bell do not regard the specific provisions of the Code, § 81-1104. The terms of that statute are mandatory, and leave no room for choice at the hands of the court. To avoid its terms resort may not be had to waiver or to principle unaffected by statute as could be done in a case where no specific mandate or direction is given by statute to the court to *grant a new trial* on account of such error. Much ingenious and scintillating discussion can not get around the proposition, that where the statute is so violated by the judge a new trial must be granted. The expression "lie in ambush" was used in *Young* v. *State,* 65 *Ga.* 525 (3), which did not involve violation of the statute by the judge, but related to improper remarks made by an attorney of the opposing party. The statute shows the route to justice that was contemplated by the legislature. That can be changed by legislative action, but not by the court.

Upon response to rule nisi issued by the court (Code, § 6-1611)

to show cause why the *Potter* decision supra, should not be reviewed and overruled, the same has been considered, and the court declines to overrule it. Reid, C. J., Atkinson, P. J., and Jenkins, J., favor its reaffirmance; while Bell, Grice, and Duckworth, JJ., are of the opinion that it should be overruled.

The second question propounded by the Court of Appeals is answered in the affirmative. Reid, C. J., Atkinson, P. J., and Jenkins, J., concur. Grice, J., concurs specially. Bell and Duckworth, JJ. dissent.

3.  The third question is by its terms dependent upon the second question being answered in the negative. As that question is answered in the affirmative, no answer is required to the third question propounded by the Court of Appeals.

4.  The fourth question is by its terms dependent upon the second and third questions being answered in the negative. As neither of these questions is answered in the negative, no answer to the fourth question is required.

5, 6.  On consideration of the fifth and sixth questions propounded by the Court of Appeals, this court being evenly divided, Reid, C. J., Atkinson, P. J., and Jenkins, J., being of the opinion that under the facts indicated in these questions the complainant would not be estopped, but that the motion for new trial should be sustained, and Bell, Grice, and Duckworth, JJ., being of the contrary opinion, these questions are returned without answer.

BELL, Justice, concurring in part and dissenting in part.

1.  The Code, § 81-1104, declares: "It is error for any judge of a superior court, in any case, whether civil or criminal or in equity, during its progress, or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved, or as to the guilt of the accused; and should any judge of said court violate the provisions of this section, such violation shall be held by the Supreme Court or Court of Appeals to be error, and the decision in such case reversed, and a new trial granted in the court below, with such direction as the said Supreme Court or Court of Appeals may lawfully give." This section is a codification of the act of February 21, 1850, sometimes referred to as the "dumb act." Cobb's Digest, 462. In the instant case we are endeavoring to answer certain questions which have been certified by the Court of Appeals. We are not concerned with the wisdom of this statute,

or with any question as to whether it has been violated. Of the six questions that were certified, the first inquiries as to presumption of injury, assuming that a violation has in fact occurred, while the other five relate to procedure in complaining of such error. The first question also assumes that a proper assignment of error has been made.

It should be further noted that all of the questions refer to error occurring during the "progress" of the trial, "and otherwise than in the charge to the jury," and that the complaining party was not himself the party in whose favor such error was committed.

In the circumstances, I concur in the ruling in the first headnote as prepared by the Presiding Justice, except that I dissent from the statement that "An answer in the affirmative to the first question results from application of the principles stated in the second division of this opinion," and also from any implication as to procedure in the reference to "improper argument by the solicitor-general."

2. I dissent from the ruling in the second division and from the reasoning in reference to it. The opinion follows the decision in *Potter* v. *State*, 117 *Ga.* 693 (supra), which was concurred in by all the Justices, and which for this reason is said to be "binding as a precedent and controlling on the question now propounded by the Court of Appeals."

A rule nisi having issued for the purpose of determining whether that decision should be reviewed and overruled, the opinion not only declares the decision binding as a precedent, but seeks to justify it, and to show why it should be sustained and not overruled. In the circumstances we have two general questions for consideration: (1) whether the decision is binding as a precedent until it is reviewed and overruled, and (2) whether now, on such review, it should *be* overruled. It is therefore not only proper, but necessary, to consider both these questions in determining the answer that should be given to the second question propounded by the Court of Appeals. I will deal with these questions in the order stated, subdividing the present division accordingly, as part *A* and part *B*.

*A.* If I considered the *Potter* decision binding, I would of course have to concur specially, since only three Justices favor overruling it, whereas conclusion to that effect by the entire court of six Justices would be necessary. Code, § 6-1611. But I can not agree

that the decision is binding, notwithstanding it was concurred in by all the Justices. I say this because in my view it is itself contrary in principle to earlier unanimous decisions to which it should yield as authority. The point is not as to error, but is whether the complaining party could, with knowledge of such error, proceed through the remainder of the trial with no semblance of objection, take his chances on a favorable verdict, and then, after an adverse verdict, claim a new trial because of such error. In other words, can he lie in ambush, both for the trial judge and the opposite party, and then seek a new trial for that which might have been promptly corrected in some way, if only it had been called to the court's attention?

The solution of the problem should depend not on some supposedly special rule applicable to a particular class of errors, but on general principles governing judicial procedure for correction of errors arising during the progress of trials, whether relating to misconduct of the jury, improper remarks or misconduct by opposing counsel, improper statements or conduct on the part of the trial judge, or other matter which might be avoided or corrected in limine, or a mistrial declared. For instance, in *Bass* v. *Winfry*, 20 *Ga.* 631, the judge improperly allowed a certain writ to go out with the jury. The losing party complained of this occurrence for the first time in a motion for new trial. This court, though classing the error as a mere irregularity, made the following general observation as basis for affirmance: "It is to be presumed that the parties to a case have notice of all the acts of the court done in the course of the trial of the case. It is to be presumed, therefore, that the plaintiff in error had notice of the sending out of the writ with the jury. Why, then, did he not make known to the court his objection to its being sent out? It is a general rule that objections to acts of mere 'irregularity,' should be urged at the earliest practicable moment. And, at most, the sending out of this writ with the jury was a mere irregularity. We think the objection came too late."

In *Chattahoochee Brick Co.* v. *Sullivan*, 86 *Ga.* 50 (6) (12 S. E. 216), it was held: "It was at most a mere irregularity to allow the written charge of the court to go out with the jury; and this not being objected to at the time, it is no cause for a new trial."

In *Haiman* v. *Moses*, 39 *Ga.* 708 (3), 712, it was said that

"Generally, when a party permits proceedings to be had, in the progress of his case, without making any objection, the court will hold him to have waived the objection, and will not relieve him against the consequences of the proceeding, to which he did not object at the proper time. *Dudley's Reps.* 209; *Ga. Decisions,* part 2, 131; 2 *Kelly,* 281; 9 *Ga.* 359; 22 *Ga.* 24, 330; 27 *Ga.* 378; 36 *Ga.* 599; 37 *Ga.* 102." While the ruling thus quoted related to the admission of evidence without objection, which, it was contended, did not correspond with the allegations, these facts did not alter the force of the general principle.

In *Pritchett* v. *State,* 92 *Ga.* 65 (2) (18 S. E. 536), it was held: "It is not proper for the presiding judge to absent himself from the court-room during the trial of a murder case, without suspending the trial during his absence; but such conduct on the part of the judge will not necessitate the granting of a new trial where it appears that he was absent only a few minutes for a necessary purpose during the argument of defendant's counsel, it not appearing that any injury resulted therefrom to the accused, or that a motion to have a mistrial declared was made." While that decision did not refer to any expression or statement by the judge, it did refer to his conduct, and applied the principle that, as to errors occurring during "progress" of a trial, objection should be made at the first opportunity. While the ruling so made was criticised in *Horne* v. *Rogers,* 110 *Ga.* 362 (5) (35 S. E. 715, 49 L. R. A. 176), it is still of force as a precedent.

In *Young* v. *State,* 65 *Ga.* 525 (3), it was held: "If counsel in argument travel outside of the case, the attention of the court should be called to it, and his ruling invoked either to restrain counsel or by way of a request to charge. It is too late to raise the point on a motion for new trial." In the opinion, it was said: "For counsel to sit silently by, saying nothing, asking no correction in the charge, and never bringing his complaint to the attention of the judge, until it appears among the grounds for a new trial, would be to *lie in ambush* both for him and the opposite party, and this the law does not encourage."

Again, in *Kearney* v. *State,* 101 *Ga.* 803 (3) (29 S. E. 127, 65 Am. St. R. 344), it was said: "Where in a criminal trial the solicitor-general makes an improper statement of which the judge is not aware, or indulges in an improper argument which the judge

of his own motion promptly stops and rebukes, and no ruling as to these matters is invoked by the accused or his counsel, it is too late after verdict to take advantage of such irregularities."

In *Vaughn* v. *State*, 88 *Ga.* 731 (16 S. E. 64), it was held: "Though the formality of putting the panel upon him be not expressly waived, if, without informing the court that he declines to waive it, the prisoner acquiesces in the omission and takes part in the selection of particular jurors from the panel, raising no question touching the failure to put the panel upon him until after the full traverse jury has been selected and sworn and the evidence in behalf of the State introduced, he shall be deemed to have waived the formality by his silence and conduct."

The "dumb act" does not purport to change the rule on which the foregoing decisions are founded; nor, as hereinafter shown, does the *Potter* decision so hold.

The Code, § 102-106, declares: "Laws made for the preservation of public order or good morals can not be done away with or abrogated by any agreement; but a person may waive or renounce what the law has established in his favor, when he does not thereby injure others or affect the public interest." Such waiver can result from silence or inaction as well as express statement, and public policy and the rights of others are the only limitations. *Taffe* v. *State*, 90 *Ga.* 459 (16 S. E. 204) ; *Sarah* v. *State*, 28 *Ga.* 576.

The decision in the *Potter* case purports to distinguish between improper remarks by the solicitor-general, and expression of opinion by the trial judge in violation of the Code, § 81-1104, supra; but, in the view of the writer, no such distinction can reasonably be drawn on principle, except that it is true, as stated in that case, that there is connected with the court "no one of higher authority to bestow upon the judge the frown of disapproval or to caution the jury not to allow his improper conduct to influence them." Even so, the judge would still have power to declare a mistrial, and a party deeming himself aggrieved and considering that the error could not be corrected otherwise could and should ask for a mistrial, rather than sit idly by and allow the court and the opposite party to proceed with the trial, however long, tedious, or expensive it might be, when he knows that the court has committed error which, unless cured or waived, will render the entire trial nugatory. While this latter statement would seem to argue against

the soundness of the *Potter* decision, which is not the point I am now discussing, it is made for the purpose of illustrating that the applicable principle and the one that *should have been applied* was that which had been enunciated in the earlier unanimous decisions quoted, and thus to show that the *Potter* decision is on principle actually in conflict with such earlier decisions. See especially *Haiman* v. *Moses, Young* v. *State,* and *Pritchett* v. *State,* supra.

It was not enough to distinguish cases relating only to improper argument of counsel, and the other unanimous decisions above cited, involving the same general principle and to which no reference was there made, stand as authority above the *Potter* case. Code, § 6-1611, supra. Judge Candler apparently took the same position, in dissenting, from the decision in *Jenkins* v. *State,* 123 *Ga.* 523 (3) (51 S. E. 598), where the majority applied the ruling in the *Potter* case, as related to the question of practice.

None of the questions certified shows or intimates that the error committed by the judge was intentional or was so exceptional or grave that it could not have been easily corrected at the time, if only the attention of the judge had been called thereto. In view of the general principle on which the foregoing decisions previous to the *Potter* case are bottomed, the writer is obliged to dissent from the statement that the decision in that case is binding as authority, and also from the answer given to the second question certified by the Court of Appeals.

*B.* The question next to be considered is whether the decision should be overruled, assuming that it is binding unless and until it is so overruled.

In what has been said above reference has been made only to decisions antedating that case. But in considering the different question as to whether it should be overruled, it is permissible, of course, to consider any authority that may illustrate its infirmity as a matter of principle, whether arising before or after such decision. So, even as related to the latter question, attention is again called to the decisions hereinbefore cited.

Reference will next be made to a case reported in the same volume as the *Potter* case, and decided only about sixty days earlier, namely, *Childs* v. *Ponder,* 117 *Ga.* 553 (43 S. E. 986). In that case the court considered a remark of the judge which the plaintiff, the losing party, contended was an expression of opinion that he

was not entitled to recover; and while it was concluded that the remark could not have been hurtful, the decision did not rest alone upon that basis, but as coequal basis it was said: "Even if the remark had been one which might have hurt the plaintiffs, they made no motion for a mistrial, and invoked no ruling of the court at the time. Parties can not take their chances for a favorable verdict, and then, the result being unsatisfactory, ask that a new trial be granted because of irregularities such as this, which they have passed over in silence during the progress of the trial." That decision was rendered by only five Justices, and of course is not binding as authority; but it is cited only as pursuasive authority in determining the soundness of the *Potter* decision. It was not referred to in any manner in the latter decision, and was probably overlooked. There was no dissent in the *Childs* case, one Justice being absent. As to this, see unnumbered page at front of the same volume, stating names of the Justices at that time and accounting for the absence of Justice Lumpkin. The other five Justices were the same in both cases.

On the practice question, the decision in the *Potter* case has not been followed in any later unanimous decision by this court to the extent of granting a reversal. See *Grant* v. *State*, 122 *Ga.* 740 (3) (50 S. E. 946); *Jenkins* v. *State*, 123 *Ga.* 523 (3) (supra); *City of Columbus* v. *Anglin*, 120 *Ga.* 785 (8) (48 S. E. 318); *Reed* v. *State*, 163 *Ga.* 206 (2) (supra); *Crumady* v. *State*, 168 *Ga.* 457, 466 (148 S. E. 157). There may be physical precedents in harmony with it; but cases of that character would not be binding as authority, whether decided before or after that decision.

In *Perdue* v. *State*, 135 *Ga.* 277 (69 S. E. 184), it was held: "Where remarks are made by the trial judge to counsel in a criminal case in the hearing of the jurors, which counsel contend were of such a character as to prejudice the minds of the jurors hearing them against the cause of their client, they should either move for a postponement of the hearing in order that other jurors may be empaneled than those present when the remark is made, or, if the jurors have actually been selected and empaneled to try the particular case, a motion should be made to have a mistrial declared; and upon the judge's refusal to grant a motion of the character indicated, his ruling would be subject to review. Counsel, having failed to make such motion and having proceeded without objec-

tion with the trial, can not, after conviction, raise the question as to the prejudicial nature of the remarks complained of, in a motion for a new trial."

In *Kay* v. *Benson,* 152 *Ga.* 185 (supra), it was held: "In the absence of a timely motion for mistrial, a new trial will not be granted because of questions propounded by the trial judge to a witness under examination. Whether the asking of the questions would have amounted to error requiring a reversal, had a motion for mistrial been promptly made, need not be decided."

For other decisions to the same effect, see *Adams* v. *State,* 171 *Ga.* 90 (8) (154 S. E. 700); *Herndon* v. *State,* 178 *Ga.* 832 (6) (174 S. E. 597); *Trussell* v. *State,* 181 *Ga.* 424, 426 (182 S. E. 514); *Armstrong* v. *State,* 181 *Ga.* 538 (2) (183 S. E. 67); *Morris* v. *State,* 185 *Ga.* 67 (194 S. E. 214). Although these decisions may not involve expression of opinion by the judge as to what has or has not been proved, or as to guilt of the accused, they do involve remarks of the judge, and the principle underlying them should also control where such opinion has been expressed. The following cases are directly in point, and can be set aside in the instant inquiry only upon the strict legalism that the *Potter* decision is binding because it is older and was concurred in by all the Justices. Thus, in *Moore* v. *McAfee,* 151 *Ga.* 270 (11) (supra), it was held in effect that where the judge in a colloquy with counsel *expressed an opinion* as to what had been proved, and counsel for the losing party had full opportunity to make objection at the time and failed to do so, he could not after return of an adverse verdict have that verdict set aside and a new trial granted. In the opinion it was said: "It is unnecessary to go into the record and determine whether or not the opinion expressed by the court was upon any contested issue of fact. Plaintiffs in error can not, in a motion for new trial, avail themselves of the remarks made by the court under the circumstances attending the use of the expressions complained of. Section 4863 of the Civil Code [1933, § 81-1104] provides that a new trial shall be granted where the court expresses or intimates his opinion as to what has or has not been proved. But where the court makes such an expression of opinion in ascertaining the position of counsel as to what has or has not been proved, or the effect of certain evidence, and does so before beginning his charge to the jury, and where the remarks made are en-

tirely disconnected from the charge, as they were here, a party will not be permitted to allow the remarks to pass unchallenged until after the case has been submitted to the jury and a verdict adverse to him returned, and then seek to avail himself of them in a reviewing court. While remarks addressed to counsel in this way may be cause for a new trial, as provided in the statute just referred to, nevertheless counsel himself should take some steps to avoid the hurtful effect, by making a motion for a mistrial or asking the court to instruct the jury to disregard the remarks; but a party can not remain quiescent until after verdict and then avail himself of the remarks made by the court, in a motion for new trial, where the verdict is adverse." To the same effect, see *Barnett* v. *Strain,* 151 *Ga.* 553 (5) (107 S. E. 530) ; *Tanner* v. *State,* 163 *Ga.* 121 (9), 130 (135 S. E. 917). The *Potter* case was not referred to in any of the ten cases last mentioned.

The *Perdue* case, supra, was decided in 1910, so that for nearly a third of a century the principle there enunciated has been followed and applied by this court, as well as by the Court of Appeals. As to decisions by that court, see annotation under Code, § 81-1104, catchword "Mistrial." But even if the *Perdue* case and others like it should not be strictly in point, which the writer does not concede, still, since *Moore* v. *McAfee,* supra, decided more than twenty years ago, it has been the unanimously declared view of this court, the three decisions last mentioned having been concurred in by all the Justices, that where an expression of opinion has been made by the trial judge during the "progress" of a case, it is the duty of a party who may deem himself aggrieved thereby to make objection at once or be forever concluded, on the principle of waiver. And in the opinion of the writer, such has at all times been the consistently adjudicated rule of this court, except for the *Potter* case and the one decision following it, *Jenkins* v. *State,* supra, by four Justices. The *Potter* case and the *Jenkins* case thus stand virtually alone as against the many contrary decisions rendered by this court throughout the years. This within itself is strong evidence that the rule so laid down is unsound, and that the *Potter* decision should be overruled. The writer certainly does not suppose that it was *intentionally* overlooked in any later case, but the circumstance that it was in fact overlooked in so many later decisions is further evidence of its unsoundness. That is to say,

if it had stated a correct principle of law, the judges would likely have had the principle in mind, even if they did not recall the case by name, and, being thus put on inquiry, would have discovered the case itself. Seemingly also it would have been brought to the attention of the court by diligent and reasoning counsel, with resulting reference thereto in the later cases just enumerated.

Nor can the writer agree that the dumb act (Code, § 81-1104) was ever intended to affect the question of practice here under consideration, or other question relating to procedure for the correction of errors. While it is a procedural statute to the extent of declaring that a certain occurrence during a trial will constitute error, it does not touch the questions as to when or how complaint shall be first made or as to assignment of error. Its sole purpose was to prevent expressions of opinion by the trial judge as to what has been proved or as to guilt of the accused, and thus to change the law as to the province of the judge as it formerly existed in this State. *Stell* v. *Glass*, 1 *Ga.* 475 (5) ; *Beall* v. *Mann*, 5 *Ga.* 456 (5). It is to be construed with reference to the whole existing system of which it became a part, and in harmony therewith, so far as may be reasonably done, in view of its provisions. *McDougald* v. *Dougherty*, 14 *Ga.* 674 (4) ; *Botts* v. *Southeastern Pipe-Line Co.*, 190 *Ga.* 689, 700 (10 S. E. 2d, 375) ; *Hirsch* v. *Shepherd Lumber Cor.*, 194 *Ga.* 113 (20 S. E. 2d, 575). At the time of its enactment there was of force in this State the following statute: "The several superior courts shall have power to correct errors and grant new trials in causes or collateral issues depending in any of the said courts, in such manner and under such rules and regulations as they may establish according to law and the usages and customs of courts." Code, § 70-102; Act of 1799, Cobb, 503. Also there was apparently in existence the following principle of law: "In all applications for a new trial on other grounds, not provided for in this Code, the presiding judge must exercise a sound legal discretion in granting or refusing the same according to the provisions of the common law and practice of the courts." Code, § 70-208; Code of 1863, § 3642; *Singer Manufacturing Co.* v. *Lancaster*, 75 *Ga.* 280 (2). See History of the First Georgia Code, by Judge Richard H. Clark, Georgia Bar Association Report, 1890; *Brown* v. *Brown*, 184 *Ga.* 827, 830 (193 S. E. 754). These principles of law were evidently considered by the General

Assembly as an assurance of adequate procedure for reaching what it denounced as error, thus leaving the matter to the courts, to grant new trials under such rules and regulations as they might establish according to law and the usage and custom of courts, or according to the provisions of the common law and the usual practice. See in this connection *Dingler* v. *Cumby,* 189 *Ga.* 182, 185 (5 S. E. 2d, 753).

The opinion as delivered by my colleagues states that this statute "contemplates correction of error by motion for a new trial as provided for in other sections of the Code." This is exactly what the present writer is insisting,—the "other sections," however, to include sections 70-102 and 70-208, supra. These sections can not be reasonably excluded, and if duly considered they would require a different answer to the second question.

The principle that should be controlling here was thus stated in *O'Dell* v. *State,* 120 *Ga.* 152 (6), 156 (47 S. E. 577), although in that case it was again applied to improper remarks on the part of counsel: "The jurisdiction of this court is limited to the correction of errors of the superior courts and city courts of a given class, and the errors which can be made the subject-matter of complaint are those which arise out of the decisions, orders, decrees, and rulings of the trial courts, or out of the omission or failure on the part of those courts to discharge some duty incumbent upon them under the law, which, in the opinion of this court, is of such a character, under the particular circumstances, as to constitute an error of law and require a reversal of the judgment. The rule, that generally this court will not reverse a judgment for a failure on the part of the trial judge to rebuke disorder, when no objection is made thereto, and no ruling is invoked, is not, as is supposed by some, a rule of recent origin. It has been applied more often in recent years, but the rule is almost as old as this court."

In *Swain* v. *State,* 162 *Ga.* 777 (6) (135 S. E. 187), the court through Chief Justice Russell said: "As a general rule, the right to object to an abridgment or denial of the right to a fair and orderly trial, or to protest any occurrence which may infringe upon this right or tend to prejudice the cause of one accused of crime, must be asserted at the first opportunity after the occurrence. The failure of the defendant to immediately call the attention of the court to a known violation of rights whereby he

may be deprived of a lawful trial may be treated as a waiver of the right to object, and authorize the implication that he elects to take the chances, before the jury empaneled, of an acquittal in the trial then pending, rather than face the consequences of another trial should a mistrial be declared.   In this State one accused of crime may at his option waive any right guaranteed him by law."

The "dumb act" as properly construed does not create an exception.   Compare *Aycock* v. *State,* 188 *Ga.* 550 (10), 560 (4 S. E. 2d, 221).

That the statute did not intend to prescribe the procedure for making complaint and assigning error should be perfectly manifest, when it is once considered that the legislature is presumed to have intended justice and fair play, and not injustice or absurdity. Any other view would require a new trial notwithstanding the opinion so expressed by the judge may have related to a fact that was admitted by *the movant,* or was established without dispute by the evidence, and even though the expression may have been favorable to him.   Moreover, it would even be contrary to the law as to direction of verdicts when they are demanded by the evidence, and would otherwise result in absurdity and injustice.

Certain statements by the United States Supreme Court are interesting in this connection.   "Plaintiffs in error finally complain as ground of error of certain remarks by the court which, it is contended, were prejudicial.   The Supreme Court [of Oklahoma] replied to this assignment of error that no objection had been taken to the remarks complained of.   Counsel now say that to have made objection would have made 'a bad matter much worse.'   But we can not accept the excuse.   We have examined the remarks complained of, and we do not think they had the misleading strength that is attributed to them.   At any rate, it was the duty of counsel to object to them, and if then the court made matters worse, or did not correct what was misleading or prejudicial, its action would be subject to review."   Drumm-Flato Commission Co. *v.* Edmisson, 208 U. S. 534, 540 (28 Sup. Ct. 367, 52 L. ed. 606, 610).   "The primary and essential function of an exception is to direct the mind of the trial judge to a single and precise point in which it is supposed that he has erred in law, so that he may reconsider it and change his ruling if convinced of error, and that injustice and mistrials due to inadvertent errors may thus be ob-

viated. An exception, therefore, furnishes no basis for reversal upon any ground other than the one specifically called to the attention of the trial court." United States *v.* United States Fidelity & Guaranty Co., 236 U. S. 512, 529 (35 Sup. Ct. 298, 59 L. ed. 696, 704). To the same effect see Fillippon *v.* Albion Vein Slate Co., 250 U. S. 76 (39 Sup. Ct. 435, 63 L. ed. 853) ; Beaver *v.* Taylor, 93 U. S. 46 (23 L. ed. 797).

So in the present inquiry it would not do to say that if objection had been made, it might have made bad matters worse; for even if it might have done so, the aggrieved party would still have had his remedy.

In the opinion of my esteemed colleagues allusion is made to a "controversial running fire" with the trial judge. It seems to the writer that no such warfare should be in the slightest degree apprehended. The judges are sworn officers; and aside from their desire to do justice, they would generally wish to preserve their good reputations by avoiding error, and by correcting it, if possible, where it has been committed.

For an error such as we are now considering, the same judge who committed it must be appealed to at some time; and why not appeal to him at the time of its commission, instead of waiting till after verdict, and then praying for a new trial at his hands? Such a practice would be a resource against waste, and at the same time would promote justice and fair dealing. Such errors are usually *inadvertent,* and the only burden upon counsel would be to ask courteously for retirement of the jury and for such instructions to be given on their return as would eradicate the error so committed. If the error should be considered so grave that it could not be cured in this manner, a motion to declare a mistrial would be in order, and in either event the client's rights would be preserved, whatever might be the action or temper ·of the trial judge. Cf. *Brooks* v. *State,* 183 *Ga.* 466 (188 S. E. 711, 108 A. L. R. 752).

The statute under consideration does not purport to deal with these questions, either expressly or by implication; and for analogy, let us examine for a moment the constitutional provision that "Legislative acts in violation of this constitution, or the constitution of the United States, are void, and the judiciary shall so declare them." Code, § 2-402. Neither does this provision refer to procedure; and yet it has been held in numerous decisions by this

court that in order to raise such question as to constitutionality, "the statute which the party challenges, and the provision of the constitution alleged to have been violated, must both be clearly specified, and it must also be shown wherein the statute violates such constitutional provision." *Abel* v. *State*, 190 *Ga.* 651, 653 (10 S. E.'2d, 198), and cit.

It seems to the writer that it would be unreasonable and unjust to permit a party to sit idly by, after some mere inadvertent expression by the trial judge, and to comfort himself as it were, throughout the whole remainder of the trial, in the belief that no matter what happens or what the verdict may be, a new trial must be granted because of such error—an error, mind you, that was committed not in the final charge but "during progress" of the trial, when there was full opportunity to call the matter to the judge's attention by some motion, objection, or request, at the very time of its commission.

In my opinion, the *Potter* decision is about as unsound as any decision could be, and should be overruled.

3, 4. I concur in the statement that unless question 2 is answered in the negative, the Court of Appeals does not request instructions upon the third and fourth questions.

I am authorized to say that Mr. Justice Duckworth concurs in this opinion. Mr. Justice Grice directs me to say that he also concurs therein except as to the ruling in the second division as to *Potter* v. *State,* it being his opinion that the decision in the *Potter* case is unsound and should be overruled, but that it is binding until it is overruled.